UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAFAEL BEAN,

        Plaintiff,                Case No. 2:11-cv-427

v.                                            Honorable Robert Holmes Bell

KEN TRIBLEY et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. On June 18, 2012, this Court ordered service of Plaintiff's complaint on Defendants Hill and Nadeau. On September 11, 2012, Defendants Hill and Nadeau filed a motion for summary judgment (docket #20) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #24) and brief (docket #25) on or about October 1, 2012. Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted, in part.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE,

ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff sues the following Baraga employees: Assistant Deputy Wardens Ken Tribley and (unknown) Alexander; Resident Unit Managers B. Mercier and (unknown) Tallio; Nurses Peggy Oatley and C. Tammelin (a.k.a. LaForrest); Nurse Supervisor J. Kimsel; Resident Unit Officers J. Hill, (unknown) Nadeau, (unknown) Berttuccio, (unknown) Kerkala, (unknown) Sego, (unknown) Lay; Lieutenant (unknown) Devoe; Nurse Administrator J. Stephenson; Sergeants (unknown) Brown and (unknown) Vizna; Corrections Officers (unknown) Neubecker; Hearing Officer T. Mohrman; and Hearing Investigator (unknown) Mohr.

On June 18, 2012, the court dismissed all of the named Defendants except for Defendants Hill and Nadeau. Plaintiff alleges that Defendants Hill and Nadeau deprived him of a total of forty-two breakfast and lunch trays between May 8, 2010 and June 30, 2010, in violation of his Eighth Amendment rights. For relief, Plaintiff seeks compensatory and punitive damages. He also requests an order requiring Defendants to release him to the general population.

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain

3

the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a

4

medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants Hill and Nadeau offer the MDOC Prisoner Step III Grievance Report for Plaintiff, which shows that Plaintiff has filed fifty step III grievance appeals while incarcerated at MBP since May of 2009. Of those grievances, only twelve were filed at step I during the time period that Plaintiff alleges he was first denied a food tray by Defendants Hill and Nadeau. (Docket 21-3.) Defendants offer copies of the grievances, appeals, and responses for each of the twelve grievances filed during the pertinent time period.

In Grievance MBP-10-05-1286-12e1, Plaintiff complains that S. Montgomery, R.N., failed to check his weight on May 24, 2010. The response indicates that Plaintiff was not taken out of his cell due to his assaultive behavior. Plaintiff fails to name any other parties in his step I grievance. (Docket #21-4.) In Grievance MBP-10-06-01357-12f1, Plaintiff complains that Steven Mleko, R.N., denies him his morning medication every weekend that Mleko works. The response indicates that Plaintiff assaulted Mleko on June 1, 2010, when Mleko entered his vestibule to give Plaintiff his medication and that Mleko offers grievant his medications and dispenses them when it is safe. (Docket #21-5.)

5

In Grievance MBP-10-05-1242-22z, Plaintiff complains that he was placed in the shower with no wash cloth, and that he was only given a dirty towel. (Docket #21-6.) In Grievance MBP-10-06-1356-12b1, Plaintiff contends that Psychologist Mickalenis came to his cell with Defendant Hill in response to a kite and would not meet with Plaintiff privately. The response indicates that Psychologist Mickalenis would not meet privately with Plaintiff because of his recent assaultive behavior. (Docket #21-7.) In Grievance MBP-2010-05-1164-27a, Plaintiff complains that Defendant Hill and other staff subjected him to a fabricated food loaf restriction. In the step I grievance, Plaintiff also asserts that Defendant Hill and other staff deprived him of 18 food trays in the past two months in retaliation for filing grievances. Plaintiff's grievance was rejected at each step because it involved a major misconduct for threatening behavior and disobeying a direct order, which pertains to the prisoner disciplinary process and is non-grievable. (Docket #21-8.)

In Grievance MBP-2010-05-1210-17a, Plaintiff claims that Sergeants Sebaly and Makela harass black prisoners and that they improperly denied him showers. The response indicates that Plaintiff refused to shower when asked and that Plaintiff's grievances appeared to be vindictive and retaliatory. (Docket #21-9.) In Grievance MBP-10-05-1151-09d, Plaintiff complains that he had been improperly placed on a state issue clothing and container restriction. Step I respondent M. Cody states that Plaintiff received a misconduct for assault and battery on May 9, 2010, after Plaintiff placed state issue clothing in his bed in order to make it look as if he were lying there. When an officer entered Plaintiff's vestibule, Plaintiff jumped out from behind the cell's dividing wall and threw an unknown substance on the officer. Because of the nature of the incident, Plaintiff was placed on the state issue clothing and container restriction. The restrictions were approved by Deputy Alexander and Plaintiff was found guilty of the assault and battery on May 24, 2010. (Docket #21-10, pp. 4-5 of 5.)

In Grievance MBP-10-05-1209-17a, Plaintiff complains that he had been denied his one hour yard break by Defendant Nadeau on May 14, 2010. Plaintiff also claims that he was being denied floss, a razor, food trays, hearings on major misconducts, and health care. (Docket #21-11, p. 4 of 5.) In the step I response to the grievance, it is noted that Plaintiff had received numerous misconducts, including three for assaulting staff, and four for threatening behavior. Respondent states that Plaintiff did not receive services because he refused them or because he would not allow staff to safely provide them and noted that Plaintiff "has been hiding around the corner on staff with a dummy in his bed to make it look like he is sleeping in attempts to lure them in to assault them" and that one officer was assaulted in that manner. (Docket #21-11, p. 5 of 5.)

In Grievance MBP-10-05-1116-12c4, Plaintiff complains that a psychologist conducted a cell side interview with Defendant Nadeau present and that Defendant Nadeau laughed at Plaintiff. (Docket #21-12, p. 6 of 6.) In Grievance MBP-10-05-1117-12D1, Plaintiff complains that he was denied blood pressure medication by Nurse Mleko on May 8, 2010, and May 9, 2010. (Docket #21-13, p. 5 of 5.) In Grievance MBP-10-05-1208-17a, Plaintiff contends that Defendant Nadeau falsified a misconduct on Plaintiff for allegedly assaulting staff. Plaintiff also asserts that Defendant Nadeau threatened to tamper with his food trays and that he was being starved by "this officer." (Docket #21-14, p. 4 of 5.) Finally, in Grievance MBP-2010-04-1024-05b, Plaintiff alleges that Sergeant Makela falsely instituted a food loaf restriction on him. (Docket #21-15.)

In response to the motion for summary judgment, Plaintiff asserts that he did grieve the denial of food trays by Defendants Hill and Nadeau in two of the grievances. As noted by Plaintiff, in Grievance MBP-2010-05-1164-27a, he states that Defendant Hill, along with other staff, deprived him of 18 food trays over a two month period ending on May 8, 2010. (Docket #21-8.) And in Grievance MBP-10-05-1208-17a, Plaintiff claims that on May 9, 2010, Defendant Nadeau

7

threatened to tamper with his food trays and that he was being starved by "this officer." (Docket #21-14, p. 4 of 5.) Finally, the court notes that in Grievance MBP-10-05-1209-17a, Plaintiff claims that he was being denied floss, a razor, food trays, hearings on major misconducts, and health care by Defendant Nadeau. (Docket #21-11, p. 4 of 5.)

The undersigned concludes that Plaintiff has exhausted his administrative remedies with regard to his claim that Defendant Hill and other staff deprived him of 18 food trays over a two month period ending on May 8, 2010, and his claim that Defendant Nadeau denied food trays on May 9, 2010, and on May 14, 2010. However, Plaintiff has not exhausted his claim that he was denied food trays by these Defendants on any subsequent occasions. Therefore, the motion for summary judgment filed by Defendants Hill and Nadeau is properly granted as to any asserted denial of food trays which occurred after May 14, 2010.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #20) be denied, in part, and granted with regard to any asserted denial of food trays which occurred after May 14, 2010.

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated: May 1, 2013

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).